Jane M. Imholte
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
188 W. Northern Lights Blvd., Suite 700
Anchorage, Alaska 99503
Phone: (907) 646-3400
Fax: (907) 646-3480
Email: jane_imholte@fd.org

Counsel for Defendant Lon Dean Gillas

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>LON DEAN GILLAS,<br><br>　　　　　　Defendant. | Case No. 3:20-cr-00086-SLG-MMS<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

### I. INTRODUCTION

Lon Gillas respectfully requests a sentence of probation for five years. As this Court will see, the instant offense is anomalous in every sense of the word. It was tied to a momentary lapse in judgment rather than a propensity or desire to engage with underage sexual partners. Mr. Gillas has demonstrated he can follow the rules imposed by probation and hopes to gain insight as to why he crossed a line he had previously drawn. A custodial sentence benefits neither the public nor Mr. Gillas.

### II. THE GUIDELINES

Mr. Gillas agrees with the guideline calculation found in the Presentence Report ["PSR"] at Docket 88: a Total Offense Level of 17, and a criminal history score of zero. As to the guidelines themselves, Mr. Gillas objects only on moral and logical grounds. In most cases, a

sentencing memorandum includes a history of the relevant guideline. That analysis ensures the Court knows the Sentencing Commission was "exercising" its "characteristic institutional role" and accounting for "empirical data and national experience" when formulating the guidelines. *Kimbrough v. U.S*, 552 U.S. 85, 108 (2007). The guidelines for child-pornography are, however, so detached from anything resembling "empirical data" as to be worthless.

The Ninth Circuit firmly supports this assertion. In *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011), the court sounded the alarm with respect to § 2G2.2: "the child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role." *Id*. at 960 (quoting *Kimbrough*, 552 U.S. at 109). Thus, "district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines." *Id*. The child-pornography guidelines "have been substantively revised nine times during their 23 years of existence," and with "[m]ost of the revisions [] Congressionally-mandated and not the result of an empirical study." *Id*. at 963. In other words, § 2G2.2 is based on not much at all. District Court Judges agree: in 2019, judges granted a below-guidelines variance from § 2G2.2 59% of the time.[1] These guidelines do not reflect any kind of intelligent thinking about deterring crime, the harm inflicted by the offense, or anything else.

---

[1] *See* United Sates Sentencing Commission, "Federal Sentencing of Child Pornography Non-Production Offenses," p.5 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf) (last visited July 20, 2022).

## III. OBJECTIONS TO THE PRESENTENCE REPORT AND SPECIAL CONDITIONS

**A. Mr. Gillas denies the facts as written in Paragraph 8.**

Mr. Gillas objects to the inclusion of Paragraph 8 entirely. While the court is free to consider "without limitation" any information about Mr. Gillas, the paragraph grossly misstates the facts. Mr. Gillas entered into a sexual "slave contract" with M.R. that included express advance consent for all of the activities mentioned in the PSR. The fact that no charges were filed supports the finding that these were acts of "consensual non-consent," rather than sexual assault.

**B. Mr. Gillas objects to proposed Special Conditions 5 and 6.**

The PSR proposes numerous special conditions of supervision, most of which Mr. Gillas accepts. However, Mr. Gillas is opposed to the requirement in Special Condition 5 that he submit to periodic polygraph testing. In addition to being inadmissible in a criminal trial,[2] the efficacy of polygraphs is rejected by most psychologists: "The idea that we can detect a person's veracity by monitoring psychophysiological changes is more myth than reality.[3]" And yet this pervasive myth is wreaking havoc on those poor souls under supervision.

Proposed special condition 6 has confusingly worded language, and as such, this objection may be moot. However, Mr. Gillas requests that the condition be changed as follows:

---

[2] *See United States v. Scheffer,* 532 U.S. 303 (1998).
[3] *See* "The Trust About Lie Detectors" (https://www.apa.org/topics/cognitive-neuroscience/polygraph) (last visited July 20, 2022).

*United States v. Lon Dean Gillas*
Case No. 3:20-cr-00086-SLG-MMS  Page 3

"The defendant shall <u>submit to a sex offender assessment and follow any recommendations for treatment</u>." Given Mr. Gillas' low likelihood to reoffend, requiring treatment for a condition that is nonexistent is as cruel and inexplicable as requiring sham polygraph "exams."

### IV.  Sentencing Reform Act: 18 U.S.C. § 3553

At sentencing, courts should impose only what is necessary to achieve the Sentencing Reform Act's goals—and nothing more. *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) ("[a] substantively reasonable sentence is one that is 'sufficient, but not greater than necessary'") (quoting 18 U.S.C. § 3553(a)). Although Guideline ranges are relevant, courts "***may not presume*** that the Guideline range is reasonable," *Gall v. U.S.*, 552 U.S. 38, 49–50 (2007); instead, they must focus on deterrence, retribution, incapacitation, and rehabilitation.  See 18 U.S.C. § 3553(a)(1),  (2)(A)–(D);5 see also *Rita v. U.S.*, 551 U.S. 338, 366 (2007) (Stevens, J., concurring)  (noting guidelines are "truly advisory"). Courts are "free to make [their] own reasonable application of the § 3553(a) factors, and to ***reject*** (after due consideration) the advice of the Guidelines"—which should not have "any thumb on the scales." *Kimbrough*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring) (emphasis added).

Before discussing the Sentencing Reform Act factors, Mr. Gillas' past and the circumstances involving this offense must be understood.

A.  **About Mr. Gillas**

Mr. Gillas was married for nearly thirty years.  He and his wife raised four children. His curiosity and interest in the outdoors lead him into teaching, for which he received both an undergraduate and Master's degrees.  Mr. Gillas, himself an Eagle Scout, was a Boy Scout leader

for his three sons and countless other Scouts. He carries on the tradition of exploring in the outdoors today with his grandchildren. He moved to Alaska in 2009, realizing the life-long dream of so very many first-generation Alaskans.

Mr. Gillas has not been convicted for, nor is he being sentenced for, his sexual proclivities that are outside the standard deviation. Mr. Gillas is chastened by this case: by having suffered the humiliation of these charges; by having to tell his children and his 88-year-old mother about them; and by the stain of a felony conviction and sex offender registration. Mr. Gillas has come to accept that his sexual curiosity and newfound freedom led him to where he previously would not go, as there is nothing to suggest in the voluminous discovery from his computer and online accounts that Mr. Gillas ever sought sexual partners under 18 prior to this case. In fact, Mr. Gillas here crossed a line he had previously drawn repeatedly:

> lgillas@wbb.bssd.org 2020-06-28T17:29:02.525Z
>
> Can each of you think of any hard limits each of you may have? For example my personal had limits and cutting, needles, except for installing piercings, kids, illegal drugs, and non-consent.
>
> lgillas@wbb.bssd.org 2020-06-28T17:29:30.438Z
>
> I always get permission before doing anything.

Even the police officer who interviewed Mr. Gillas noted that he had once turned in someone purporting to be a 15-year old on an adult chat site.

> him that she was probably 16 yrs-old when she sent him the picture. Gillas said that underage girls were a hard no for him. I agreed with him and told him I had seen his email where a 15 yr-old girl communicated with him on Fetster and not only did he decline to speak with her, he reported her to the site administrator so she could be blocked. I then showed him the emails from a 16 yr-old girl whose username was "KittyKatKaty". I stated that the

Today, Mr. Gillas accepts he needs help controlling his sexual appetites, and in fact he was relieved to learn there was no actual 16-year-old girl here.

*United States v. Lon Dean Gillas*
Case No. 3:20-cr-00086-SLG-MMS                                                                                          Page 5

Finally, Mr. Gillas comes before the court with zero criminal history points. He has one prior conviction, for unlawfully taking a deer in Oregon in 2007. He was sentenced to 24 months of probation. He received no violations during that time.

**B. The Court Should Sentence Mr. Gillas to Probation for Five Years**

Mr. Gillas believes a sentence of probation for five years satisfies the Sentencing Reform Act's goals. That sentence is appropriate for a few reasons.

First, Mr. Gillas' offense was uniquely de minimus in that it was a one-time act that harmed no victim. For such an aberration of character, a felony conviction and sex offender registration are more than sufficient to meet the goals of deterrence. 18 U.S.C. § 3553(1), (2)(B) (requiring courts to consider need to "deter[] . . . criminal conduct").

Second, Mr. Gillas is less culpable—by far—than the average attempted possessor child pornography. There is no treasure trove of images, as this court routinely sees. Nor are there any other attempts to contact minors. Mr. Gillas made no attempts to meet this "16-year-old" girl, who was in fact another adult man engaging in the same fantasy role play as Mr. Gillas. Given that unique circumstance of this offense, a custodial sentence would do little to "promote respect for the law, and [] provide just punishment." 18 U.S.C. § 3553(a)(2)(A).

Third, there is no need to impose a custodial sentence to incapacitate Mr. Gillas and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Mr. Gillas has demonstrated he is a deserving candidate for a non-custodial sentence. For the past two years of pretrial release he has lived under strict supervision at the House of Transformation with nominal violations. A closely-monitored life of restrictions was an adjustment for a 65-year-old

man with only one prior offense—a hunting misdemeanor—so there was some confusion about the rules at times. However, Mr. Gillas ultimately demonstrated respect for the law and court orders. He has also been assessed as very low risk to reoffend[4]:

> Mr. Gillas' score (calculated as of the date of my assessment) classifies him as a Level I offender, indicating that he is in the Very Low range of risk for being charged with or convicted of a new sexual crime. His score is in the 4.2 percentile. His score would be expected to be higher than 2.7% of offenders, the same as 3%, and lower than 94.3%. His relative risk ratio is 0.26, meaning that offenders who achieve a similar score are 26% as likely to re-offend as those with an average score. Finally, offenders with the same score were found to have a 1.3% recidivism rate over a five-year period. In sum, the STATIC-99R places Mr. Gillas as being at very low risk. Specifically, his only risk factor is a history of an unrelated victim (based on the allegations against him). His advanced age is a strong protective factor.

With the ongoing support of his family, Mr. Gillas will seek therapy to examine how and why he justified the one-time fantasy of an under-age sexual encounter.

Fourth, the Sentencing Reform Act asks courts to consider "needed educational or vocational training, medical care, or other correctional treatment" in imposing sentence. 18 U.S.C. § 3553(a)(2)(D). Custodial sex offender treatment is not likely suitable given the unique circumstances of this case, benefitting neither the public nor Mr. Gillas. Mr. Gillas and the public are best served, instead, by community supervision and the abundant resources to be found there.

## V. CONCLUSION

For the reasons stated above, Mr. Gillas respectfully requests a term of probation for 5 years.

---

[4] *See* Forensic Psychological Evaluation by Dr. McCrae, attached in sealed memorandum.

*United States v. Lon Dean Gillas*
Case No. 3:20-cr-00086-SLG-MMS  Page 7

DATED at Anchorage, Alaska this 21st day of July, 2022.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

/s/ Jane M. Imholte
Jane M. Imholte
Assistant Federal Defender

Certificate of Service:
I hereby certify that I electronically filed the foregoing and any attachments with the Clerk of Court for the United States District Court for the District of Alaska by using the district's CM/ECF system on July 21, 2022. All participants in this case are registered CM/ECF users and will be served by the district's CM/ECF system.
/s/ Jane Imholte